UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

LORI CHAVEZ-DEREMER,
SECRETARY OF LABOR,
U.S. DEPARTMENT OF LABOR,

CIVIL ACTION NO. 3:25-CV-00861

Plaintiff,

(MEHALCHICK, J.)

v.

DEANGELO CONTRACTING
SERVICES, LLC, AS SUCCESSOR TO
DBI SERVICES, LCC AND DEANGELO
BROTHERS, LLC, DBI SERVICES, LLC,
PNC BANK, N.A., AND THE
DEANGELO BROTHERS LLC GROUP
BENEFIT PLAN,

Defendants.

## MEMORANDUM

Plaintiff Lori Chavez-Deremer, Secretary of Labor at the U.S. Department of Labor, (the "Secretary") initiated this action by the filing of a complaint on May 15, 2025. (Doc. 1). Presently before the Court is Defendant PNC Bank, N.A.'s ("PNC") motion to transfer venue. (Doc. 35). For the following reasons, PNC's motion to transfer venue shall be **GRANTED**. (Doc. 35).

## I.   BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the Secretary's complaint as well as PNC's brief in support and, for the purposes of the instant motion, is taken as true. DeAngelo Brothers, LLC ("DeAngelo Brothers") is a residential lawn care business in Pennsylvania that was founded by two brothers in 1978. (Doc. 1, ¶ 15). The two brothers also formed DBi Services, LLC ("DBi"), which integrated with DeAngelo Brothers and provided transportation infrastructure and contract services (hereinafter, DeAngelo Brothers and DBi

will be referred together as the "Company") (Doc. 1, ¶ 16). DeAngelo Brothers established a group benefit plan (the "Plan") in approximately October of 2000 and restated it effective January 1, 2014. (Doc. 1, ¶ 11). Under the Plan, DeAngelo Brothers provided the payment or reimbursement of medical and health benefits to its employees and participating employers, such as DBi. (Doc. 1, ¶ 11). The Company acted as the Plan's administrator and held discretionary authority over the Plan's assets. (Doc. 1, ¶¶ 12-13). As such, the Company was a named fiduciary under Sections 402(a) and 3(21)(A) of the Employment Retired Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1102(a) and 1002(21)(A). (Doc. 1, ¶ 13). The Company was also a party in interest to the Plan under ERISA Sections 3(14)(A), (C), and (E), 29 U.S.C. §§ 1002(14)(A), (C), and (E). (Doc. 1, ¶ 13). Pursuant to the Plan, the Company provided funding through employee and employer contributions, and funds were used to pay benefit claims adjudicated by Aetna under the Plan's terms. (Doc. 1, ¶ 14). Employee Contributions included deductions from their paychecks and direct payments, such as coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). (Doc. 1, ¶ 14). It was the duty of the Chief Human Resources Officer for DBI, Diana Newmier ("Newmier") to ensure that the Plan was funded and that Plan contributions from employees followed ERISA. (Doc. 1, ¶ 14).

In 2016, the two brothers sold the Company to Sterling Partners, a private equity firm, and resigned from all managerial positions but retained a non-controlling ownership interest. (Doc. 1, ¶ 17). In 2020, one of the brothers founded DeAngelo Contracting Services, LLC ("DCS") to conduct residential lawn care, road marking, and equipment rental and sales. (Doc. 1, ¶ 18). DCS purchased assets from the Company related to those services. (Doc. 1, ¶ 18). Sterling Partners suffered financial distress, and Partners Group, a private equity firm in

Switzerland, took control of the Company through a financial restructuring. (Doc. 1, ¶ 19). In 2021, the Company and its affiliates entered into a Revolving Credit, Term Loan, and Security Agreement with PNC (the "Loan Agreement"). (Doc. 1, ¶ 20). Under the Loan Agreement, PNC made accommodations for financial assets and served as the Company's depository institution by holding its bank accounts. (Doc. 1, ¶ 20).

The Company continued to decline after refinancing with PNC. (Doc. 1, ¶ 21). In September 2021, the Company informed PNC that quarterly statements would trigger a loan default but insisted that it would cure this default. (Doc. 1, ¶ 22). The Company and PNC amended the Loan Agreement to allow the Company to operate during discussions of the Company's future with Partners Group. (Doc. 1, ¶ 22). However, there was no long-term solution to the Company's financial position. (Doc. 1, ¶ 23). In October 2021, PNC issued a final default letter, drained the Company's bank accounts, and seized employee premiums owed to the Plan not yet remitted to Aetna. (Doc. 1, ¶ 23). On October 22, 2021, the Company abruptly ceased operations and laid off a large portion of its employees with only minutes of notice. (Doc. 1, ¶ 24).

The Company retained a small group of employees, including Newmier and other human resources staff, to manage asset disposition and liaise with customers and creditors. (Doc. 1, ¶ 25). The Company issued COBRA notices to the laid off employees, and approximately thirty employees elected to continue their Plan coverage under COBRA. (Doc. 1, ¶ 25). DCS offered to purchase the Company's assets for $38,500,000, and the Company entered into a transition services agreement that allowed DCS to hire former Company employees and take over customer relationships. (Doc. 1, ¶ 26). In the midst of DCS's offer, PNC maintained control over the Company's assets and spending activity. (Doc. 1, ¶ 27).

In November 2021, the Company ceased all Plan funding, including past-due contributions. (Doc. 1, ¶ 28). Aetna contacted the Company to seek missing Plan contributions and raised the Company's failure to fund the Plan to Partners Group and PNC. Doc. 1, ¶ 28). The Company could not pay Plan contributions due to PNC's control over its accounts and assets. (Doc. 1, ¶ 28). The amount of funds not remitted to Aetna totaled approximately $97,410.85 in deductions from employees' paychecks and approximately $55,124.31 from COBRA payments. (Doc. 1, ¶ 28). On November 16, 2021, Aetna sent a letter to the Company threatening termination of the Plan effective November 24, 2021. (Doc. 1, ¶ 29). No individual from the Company, Partners Group, or PNC warned participants and beneficiaries of the Plan's funding failure or risk of coverage cease. (Doc. 1, ¶ 29).

On December 13, 2021, DCS and PNC executed a sale agreement under Article 9 of the Uniform Commercial Code ("UCC"), transferring most of the Company's assets and operations in exchange for $31,750,000 to DCS. (Doc. 1, ¶ 31). The balance of the Loan Agreement was satisfied largely through this sale. (Doc. 1, ¶ 31). PNC retained control of the Company's remaining assets and operations but did not release funding for the Plan's liabilities. (Doc. 1, ¶¶ 33-34). On December 31, 2021, the Company purported to terminate the Plan, but no person or entity warned the participants or beneficiaries. (Doc. 1, ¶¶ 34-35). On January 20, 2022, Aetna terminated coverage retroactively to November 24, 2021 due to $379,432.81 in unpaid Plan funding. (Doc. 1, ¶ 37). On March 17, 2022, the Company sent a letter to PNC demanding a return of $55,124.31 in COBRA premiums because they belong to the former employees. (Doc. 1, ¶ 38). To date, PNC has not refunded the COBRA funds as well as other employee Plan contributions. (Doc. 1, ¶ 38).

On August 30, 2023, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against DBi (the "Bankruptcy Case") in the U.S. Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"). (Doc. 36, at 6). On November 14, 2023, the Secretary filed a proof of claim in the Bankruptcy Case. (Doc. 36, at 7). The proof of claim alleges a priority claim of $4,304,340.87, acknowledging that "'the money claimed by the Department is owed to Plan or its participants and beneficiaries and request[ing] 'that payments be made directly to the Plan (or, if appropriate, to its participants or beneficiaries), and not the Department of Labor.'" (Doc. 36, at 7) (emphasis omitted). The proof of claim also asserts that DBi may owe a civil penalty for violations of ERISA. (Doc. 36, at 7). In November 2023, the Secretary consented to the Bankruptcy Court's exclusive jurisdiction to determine the issue of alleged non-payment of ERISA benefits. (Doc. 36, at 8). On December 21, 2023, Areya Holder Aurzada was appointed Chapter 7 trustee (the "Trustee") for DBi's bankruptcy estate (the "Estate"). (Doc. 36, at 6-7).

The Bankruptcy Court must determine ownership of the Plan's funds, which total $16,406,955.00. (Doc. 36, at 8). The Trustee, PNC, and another creditor have alleged ownership. (Doc. 36, at 8). On July 17, 2024, PNC filed an Interpleader Complaint in the Bankruptcy Court (the "Interpleader Action") through which ownership of the funds could be determined. (Doc. 36, at 9). On June 7, 2024, the Bankruptcy Court ordered PNC to transfer the Plan's funds to the Trustee pending determination of ownership. (Doc. 36, at 9).

On May 15, 2025, the Secretary filed the instant complaint in this District, alleging two violations: (1) Fiduciary Breaches and Prohibited Transactions; and (2) Successor Liability. (Doc. 1, ¶¶ 39-49). On August 5, 2025, PNC filed the instant motion to transfer venue and its brief in support. (Doc. 35; Doc. 36). On August 26, 2025, the Secretary filed its

5

brief in opposition to PNC's motion. (Doc. 40). On September 9, 2025, PNC filed its reply

brief. (Doc. 41). This matter is now ripe for adjudication.

## II.   LEGAL STANDARD

A court may transfer venue to any other district court where the civil action might

have been brought if it serves the interests of justice and the convenience of the parties. 28

U.S.C. § 1404(a). "'The decision to transfer is in the court's discretion, but a transfer is not to

be liberally granted.'" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quoting

*Handlos v. Litton Indus., Inc.*, 304 F. Supp. 347, 352 (E.D. Wis. 1969)). A court adjudicating a

motion pursuant to 28 U.S.C. § 1404(a) must first determine whether the proposed venue is

appropriate—that is, a district court can only transfer the action to a district or division "where

[the case] might have been brought." 28 U.S.C. § 1404(a); *see also High River Ltd. P'ship v.*

*Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 491 (M.D. Pa. 2005). If venue is proper in the proposed

district, courts consider the following non-exhaustive list of factors first outlined by the Third

Circuit:

> (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the
> claim arose; (4) the convenience of the parties; (5) the convenience of the
> witnesses, but only to the extent that the witnesses may actually be unavailable
> for trial in one of the fora; (6) the location of books and records, similarly
> limited to the extent that the files could not be produced in the alternative
> forum; (7) the enforceability of the judgment; (8) practical considerations that
> could make the trial easy, expeditious, or inexpensive; (9) the relative court
> congestion in the competing courts; (10) the local interest in deciding local
> controversies at home; (11) the public policies of the fora; (12) and the
> familiarity of the trial judge with the applicable state law.

> *High River*, 353 F. Supp. 2d at 491 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d
> 873, 879-80 (3d Cir. 1995)).

The first six factors are considered the "private interest factors," while the last six

factors are the "public interest factors." *Petroleum Serv. Co. v. Santie's Wholesale Oil Co.*, No.

6

3:23CV1500, 2024 WL 816619, at *3-8 (M.D. Pa. Feb. 27, 2024). The moving party bears the burden of showing that these factors warrant transfer. *Jumara*, 55 F.3d at 879. However, the moving party "is not required to show 'truly compelling circumstances for ... change ... [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district.'" *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (quoting *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995).

### III.    DISCUSSION

PNC argues that this matter should be transferred to the Northern District of Texas because it is "inextricably tied to the [pending] Bankruptcy Case" against DBi. (Doc. 36, at 11). In response, the Secretary counters that the Northern District of Texas lacks personal jurisdiction and that PNC provides a "fatally flawed" § 1404(a) analysis. (Doc. 40, at 15). Under 28 U.S.C. § 1404(a), the Court must first determine "whether venue would be proper in the transferee district." *Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001) (citing *Jumara*, 55 F. 3d at 879). If the first prong is satisfied, then the Court must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F. 3d at 879.

A. THIS ACTION MIGHT HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF TEXAS.

PNC argues that venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1409(a). (Doc. 36, at 13-17). According to the Secretary, the Court lacks personal jurisdiction because PNC "forfeited the issue." (Doc. 40, at 12). If a plaintiff would have had a right to bring suit in the proposed transferee district at the commencement of the action, "independently of the wishes of [the] defendant," then the transferee district is a district where

the action "might have been brought." *Hoffman v. Blaski,* 363 U.S. 335, 344 (1960). Thus, in order to prevail on a motion to transfer venue under § 1404(a), the moving party must demonstrate that venue, personal jurisdiction, and subject matter jurisdiction would all have been proper in the proposed transferee district. *Hoffman*, 363 U.S. at 344; *Shutte ,* 431 F.2d at 24.

The Northern District of Texas has subject matter jurisdiction under 28 U.S.C. § 1334(b). District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). District courts may then refer matters to bankruptcy courts for adjudication. See 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."). "A proceeding is related to a Chapter 11 proceeding if the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *See Nuveen Mun. Tr. Ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293-94 (3d Cir. 2012) (explaining that an action is related to bankruptcy proceeding "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate"). Here, the Secretary's action in this district seeks to determine whether DBi is liable for violating ERISA and seeks to limit DBi's activity, which relates to the Bankruptcy Case. (Doc. 1, at 19-20)if the Secretary was awarded monetary relief, it would trigger DBi's indemnity liability. *In re Boy Scouts of Am.*, 137 F.4th 126, 148 (3d Cir. 2025) (noting that "related-to jurisdiction may exist where there are 'indemnity obligations between the debtor and non-debtor that automatically

8

result[ ] in indemnification liability against the debtor.'"). Personal jurisdiction exists because Congress established a nationwide service of process by enacting Fed. R. Bankr.P. 7004(d). *See Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 264 (5th Cir. 2019) ("With nationwide service, the forum is the United States… And residents of the United States—which Defendants undisputedly are—have enough contact with the United States that haling them into federal court does not offend traditional notions of fair play and substantial justice."). Thus, the Northern District of Texas has jurisdiction.

Venue is also proper in the Northern District of Texas. "[A] proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district in which such case is pending." 28 U.S.C. § 1409(a). Courts have consistently held that the district where a bankruptcy case is pending serves as proper venue for all proceedings "related to" to that bankruptcy case. *See, e.g., Tang v. Citic Cap. Holdings Ltd.*, No. CV 21-17008-JXN-AME, 2022 WL 6036573, at *7 (D.N.J. Oct. 7, 2022) (finding that action was "related to" bankruptcy case in the District of Delaware and transfer would serve the interests of justice). Venue is proper in the Northern District of Texas because: (1) that is the district where the Bankruptcy case is pending; and (2) this action is "related to" to the Bankruptcy Case. *See Abrams v. Gen. Nutrition Companies, Inc.*, No. CIV.A. 06-1820 (MLC), 2006 WL 2739642, at *9 (D.N.J. Sept. 25, 2006) (granting venue transfer of an action "related to" a bankruptcy case pending in transferee district by applying *Jumara* factors). This case could have been filed in the Northern District of Texas.

B.  THE PRIVATE INTEREST *JUMARA* FACTORS

Having found that the action might have been properly brought in the Northern District of Texas, the Court now considers the private interest factors as outlined in *Jumara*,

9

55 F. 3d at 879. The private interest factors are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) convenience of the witnesses to the extent they would be unavailable in a particular forum; and (6) the location of evidence to the extent it cannot be produced in a particular forum. *Jumara*, 55 F. 3d at 879 (citations omitted). These factors relate to the "convenience of the parties and witnesses," as well as "'all other practical problems that make trial of a case easy, expeditious and inexpensive[.]'" *Petroleum Serv. Co.*, 2024 WL 816619, at \*3 (quoting *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 n.7 (3d Cir. 2017)).

### 1.  Deference to Plaintiff's Choice of Forum

The first private interest factor relates to the plaintiff's choice of forum. *Petroleum Serv. Co.*, 2024 WL 816619, at \*3. PNC argues that the Secretary's choice of forum should not receive paramount consideration because the Secretary already filed the Proof of Claim in the Northern District of Texas. (Doc. 41, at 15). The Secretary asserts that there is a policy rationale to give Plaintiff's choice greater weight in EIRSA cases. (Doc. 40, at 16). The Court finds that the first factor, Plaintiff's choice of forum, slightly favors transfer.

While this factor is usually one of paramount importance, the weight courts are instructed to give to a plaintiff's forum choice is substantially reduced when the plaintiff is not a resident of its choice forum. *Regmund v. Talisman Energy USA, Inc.*, No. CV 16-711, 2016 WL 5794227, at \*5 (W.D. Pa. Aug. 31, 2016), *report and recommendation adopted*, No. 2:16CV711, 2016 WL 5720841 (W.D. Pa. Sept. 30, 2016) ("The Supreme Court has also held that: 'When the plaintiff's choice is not its home forum ... the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in

such cases less reasonable.'") (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)); *see also High River*, 353 F. Supp. 2d at 498–99. Further, some courts in this Circuit have concluded that the increased emphasis on a plaintiff's forum choice is a legal error. *Regmund*, 2016 WL 5794227, at \*5 (finding that the presumption in favor of a plaintiff's forum choice is flawed argument because the first factor is based on a case that "was decided under the doctrine of *forum non conveniens*" and "the Supreme Court has made clear that: 'District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*.'") (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981)) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("Thus, the district court, in requiring [the defendant] to show that the § 1404(a) factors must substantially outweigh the plaintiffs' choice of venue, erred by applying the stricter *forum non conveniens* dismissal standard and thus giving inordinate weight to the plaintiffs' choice of venue."). This District is not the Secretary's home forum. *U.S. v. Klearman*, 82 F. Supp. 2d 372, 375 (E.D. Pa. 1999) (noting that plaintiff's choice of forum should be afforded limited deference because "the plaintiff is the federal government, which is no more a resident of the Eastern District of Pennsylvania than it is of the Eastern District of Missouri.").

The fact that the Secretary filed a proof of claim in the Bankruptcy Case has significance. (Doc. 36, at 7). The Third Circuit has ruled that submitting proof of claim is submission to bankruptcy court's jurisdiction. *See In re Trib. Media Co.*, 902 F.3d 384, 394 (3d Cir. 2018) (concluding that plaintiff "impliedly consented" to bankruptcy court's jurisdiction after filing a proof of claim); *see also Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1249 (3d Cir. 1994) (noting that the Supreme Court recognizes "that by filing a proof of claim

11

a creditor triggers the process of allowance and disallowance of claims, and thus submits itself to the bankruptcy court's equitable jurisdiction.") (citing *Travellers Int'l AG v. Robinson*, 982 F.2d 96, 100 (3d Cir. 1992). While this Court considers the Secretary's choice of forum and acknowledges that the Secretary prefers this District, this factor is not any more paramount than another factor due to the Bankruptcy Case. *Regmund*, 2016 WL 5794227, at *5 (giving the forum choice of out-of-state plaintiffs some degree of consideration but not enhanced or paramount consideration).

### 2.  Defendant's Choice of Forum

The second private interest factor concerns the defendant's choice of forum. *Jumara*, 55 F.3d at 879. This factor is redundant to the transfer analysis because PNC's preference for the Northern District of Texas is inherent in this motion. (Doc. 35); *see Etheridge v. World Mktg. of Am., Inc.*, No. 1:20-CV-00272, 2021 WL 1564336, at *4 (M.D. Pa. Apr. 21, 2021) ("'in reality [the second factor] does little more than frame the issue, because there would be no motion to transfer unless the defendant prefers a different forum.'") (quoting *Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018)). The second private factor is neutral. *See Jumara*, 55 F.3d at 879.

### 3.  Where the Claims Arose

The third factor examines where the claim arose. *Jumara*, 55 F.3d at 879. PNC does not address this private interest factor. The Secretary contends that the claim arose in Pennsylvania in two ways: (1) the Company's ERISA violations occurred in Pennsylvania; and (2) the Company was headquartered in Pennsylvania. (Doc. 40, at 18). The Court agrees with the Secretary. For litigation related to non-payment, an omission to remit payment occurs where the payor is located. The Company, PNC, and DCS have a principal place of

business in Pennsylvania. (Doc. 1, ¶¶ 5-10). The Plan failed to fund contributions in Pennsylvania. *See LWR Time, Ltd. v. Fortis Watches, Ltd.*, No. 3:10-CV- 1923, 2012 WL 2905187, at *8 (M.D. Pa. July 16, 2012) ("the omission to remit payment is an 'event or omission' that provides for proper venue in the district in which the payor is located.") (citing *Cottman Transmission Sys. Co. v. Martino*, 36 F.3d 291, 295 (3d Cir.1994); *Shamrock Materials v. Alliance Cos.*, No. 05–5736, 2006 WL 1892722, at *3 (E.D. Pa. July 10, 2006)). Accordingly, the third private interest factor disfavors transfer.

### 4. Convenience of the Parties and Witnesses

The fourth and fifth private interest factors consider the convenience of the parties and any potential witnesses, respectively. *Jumara*, 55 F.3d at 879. PNC argues that money expended on "litigating across the country in Pennsylvania takes away from the recovery of all unsecured creditors—including the Secretary and the Plan participants." (Doc. 41, at 16). The Secretary asserts that most of the parties are located in Pennsylvania. (Doc. 40, at 18).

Typically, courts consider identified witnesses and their location for this factor. *See Regmund*, 2016 WL 5794227, at *8-9 (W.D. Pa. Aug. 31, 2016), *report and recommendation adopted,* No. 2:16CV711, 2016 WL 5720841 (W.D. Pa. Sept. 30, 2016) (analyzing the parties' identified witnesses and their locations and convenience for this factor); *see also Petroleum Serv. Co.*, 2024 WL 816619, at *5. Additionally, Courts consider whether a party would be unable to afford to travel to the transferee forum. *Petroleum Serv. Co.*, 2024 WL 816619, at * 5 ("[c]onvenience to the parties evaluates the parties' relative physical and financial conditions, including who can afford travel to the transferee forum[.]"). As such, the Court finds PNC's argument persuasive. (Doc. 41, at 16). The monetary means that Trustee will use to pay for litigation costs will decrease the recovery of all unsecured creditors. *See Abrams*, 2006 WL

2739642, at *9 (acknowledging that any recovery plaintiff obtains against defendant will automatically increase liabilities and reduce the amount available for distribution). Although the Secretary identified four witnesses who reside in Pennsylvania, those witnesses carry only slight weight in the transfer analysis. *See McLaughlin v. GlaxoSmithKline, L.L.C.*, No CIV.A. 12-3272, 2012 WL 4932016, at *4 ("Party witnesses or witnesses who are employed by a party … have little impact on the 'balance of convenience' analysis since each party is obligated to procure the attendance of its own employees for trial."). The Court finds that the fourth factor favors transfer, while the fifth factor remains neutral. *See Etheridge*, 2021 WL 1564336, at *5-6 (holding that the convenience factors are neutral when there is no evidence that a particular witness would be unavailable in one forum).

### 5.  Location of books and records

The sixth private interest factor relates to the location of books or records. *Jumara*, 55 F.3d at 879. PNC considers this factor a "wash" and provides no further argument. (Doc. 41, at 16). The Secretary avers that PNC has not demonstrated that its records "cannot be easily reproduced and provided in electronic format." (Doc. 40, at 20). Courts have given this factor less weight in the age of modern technology, where records can be produced or transmitted electronically. *See Petroleum Serv. Co.*, 2024 WL 816619, at *6 ("the parties have not identified any documents that cannot be easily reproduced and provided in electronic format. This factor is thus neutral."); *see also Regmund v. Talisman Energy USA, Inc.*, No. CV 16-711, 2016 WL 5794227, at *5 (W.D. Pa. Aug. 31, 2016), *report and recommendation adopted*, No. 2:16CV711, 2016 WL 5720841 (W.D. Pa. Sept. 30, 2016) ("[m]odern technological advances have rendered this factor less significant than it was previously."). Therefore, the sixth private interest factor is neutral.

14

C.  THE PUBLIC INTEREST *JUMARA* FACTORS

The Court next turns to the six public interest factors. *See Jumara*, 55 F.3d at 879-80. The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make trial easy, expeditious or inexpensive; (3) the congestion of the courts' dockets; (4) the local forum's interest in deciding the case; (5) the public policies of the fora; and (6) the trial judge's familiarity with any state law. *Jumara*, 55 F.3d at 879-80 (citations omitted). These factors ask the Court to consider "'where litigation can proceed in the most efficient and inexpensive fashion.'" *Petroleum Serv. Co.*, 2024 WL 816619, at *6 (quoting *In re Amkor Tech., Inc. Sec. Litig.*, No. CIV.A. 06-298, 2006 WL 3857488, at *6 (E.D. Pa. Dec. 28, 2006)). Both parties do not present any arguments regarding the first, third, fifth, and sixth public interest factors. (Doc. 40, at 20-22; Doc. 41, at 17-19). Thus, the Court finds that the public interest factors are neutral because neither party makes an argument. *See Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising, LLC*, 575 F. Supp. 3d 532, 541 (E.D. Pa. 2021) (finding the first and fifth public interest factors neutral because neither party presented arguments); *see also Aouad*, 2023 WL 5339615, at *5 (noting that neither party made arguments regarding the first and sixth factors, rendering them neutral); *see also Alers v. Pa. Higher Educ. Assistance Agency*, No. 20-CV-2073, 2022 WL 3722085, at *6 (E.D. Pa. Aug. 29, 2022) (finding the first, fifth, and sixth public interest factors neutral because neither party presented arguments).

### 1. Practical Considerations

The second public interest factor examines practical considerations affecting any potential trial's ease, efficiency, or expense. *See Jumara*, 55 F.3d at 879. PNC argues that this weighs heavily in favor of transfer because less litigation costs will result in a "higher recovery

for all general unsecured creditors." (Doc. 41, at 17). The Secretary asserts that she has no involvement in the Interpleader Action and the "Court has greater familiarity with the Secretary's claims." (Doc. 40, at 21). The key question on this factor is "whether it is actually easier, faster or less expensive to litigate this adversary in another forum." *In re Welded Constr., L.P.*, 609 B.R. 101, 123 (Bankr. D. Del. 2019) (citation and quotations omitted).

Denying transfer will create inefficient litigation and inconsistent determinations. While DBi is the only defendant in the Bankruptcy Case, any inconsistent ruling from that case may affect the remaining defendants in this District. Further, there is a "strong presumption" to maintain the venue where a bankruptcy case is pending. *See In re Hechinger Inv. Co. of Delaware, Inc.*, 288 B.R. 398, 402 (Bankr. D. Del. 2003) (citing *In re Windsor Commc'ns Grp., Inc.*, 53 B.R. 293, 296 (Bankr. E.D. 1985)); *see also In re Reliance Grp. Holdings, Inc.*, 273 B.R. 374, 406 (Bankr. E.D. Pa. 2002) (granting venue transfer to judicial district in which debtor's bankruptcy case was pending for purposes of "the economic and efficient administration of the estate") (citation omitted); *see also In re Schouten*, 657 B.R. 531, 541 (Bankr. N.D. Tex. 2024) (finding that the non-core proceeding was "the asset of the bankruptcy estate" that provides relief to creditors and "goes to the heart of the administration of this case[.]"). Further, transfer will enable the Northern District of Texas, the court overseeing the Bankruptcy Case and already knowledgeable about the facts and circumstances of the Plan's funds, to determine this action. *See Tang*, 2022 WL 6036573, at *8 (finding that efficiency would be served by transferring civil action to the district that was already familiar with the circumstances regarding Chapter 11 proceedings); *see also Abrams*, 2006 WL 2739642, at *9 (noting that venue transfer to forum of bankruptcy case would

promote judicial efficiency by designating one forum where all claims arising from the same event could be addressed).

### 2. Local Interest

The fourth public interest factor weighs the local interest each forum in resolving the controversy. *See Jumara*, 55 F.3d at 880. PNC submits that this factor favors transfer for that it aligns with "the policy of deciding cases relating to bankrupt parties in the relevant bankruptcy court." (Doc. 36, at 23). The Secretary contends that Texas's interest in this case does not match with that of Pennsylvania's – the state where several defendants reside. (Doc. 40, at 22). "The twelfth [*Jumara*] factor pertinent to a venue transfer discussion is the local interest in deciding local controversies at home." *Welded Construction, L.P.*, 609 B.R. at 124. The home forum for litigation involving a bankrupt party is the court in which the bankruptcy is pending. *See Krystal Cadillac-Oldsmobile-GMC Truck, Inc.* v. Gen. Motors Corp., 232 B.R. 622, 627 (E.D. Pa. 1999) ("In any event, a presumption has developed that civil proceedings should be tried in the 'home' court, namely the court where the bankruptcy case itself is pending.'"). The Court acknowledges that most are the involved parties and the Plan's participants reside in Pennsylvania. *See In re Liberty State Benefits of Delaware, Inc.*, No. 11-12404(KG), 2015 WL 5468786, at *7 (Bankr. D. Del. Sept. 16, 2015) (noting that the court could not ignore the local interest in resolving this matter in the forum where the debtors' estate administration is currently taking place). With that, the Court finds this factor weighs only slightly in favor of transfer. *See In re Onco Inv. Co.*, 320 B.R. 577, 581 (Bankr. D. Del. 2005) (concluding fourth public interest factor weighed in favor of bankruptcy court rather than court in jurisdiction where parties were located).

### D. BALANCING THE *JUMARA* FACTORS

17

While the private interest factors weigh slightly favor transfer, the public interest factors favor transfer, especially the interest in avoiding inconsistent determinations with the Bankruptcy Case and reduce litigation costs. *See Jumara*, 55 F.3d at 879. Accordingly, PNC's motion to transfer is **GRANTED**. (Doc. 35).

## IV.    CONCLUSION

Based on the foregoing, PNC's motion to transfer is **GRANTED** (Doc. 35). The Clerk of Court is directed to transfer this matter to the United States District Court for the Northern District of Texas and close this matter here.

An appropriate Order follows.

**BY THE COURT:**

Dated: March 30, 2026

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**